1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
(917) 471-1894 (phone)
(615) 921-6501 (fax)
astraus@milberg.com

*Attorney for Plaintiff*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

MARY MOLINA and CARLO
GARCIA, individually and on behalf of
all others similarly situated,

                    Plaintiffs,

        v.

HRB BRANDS, LLC, HELEN OF TROY
LTD., and IDELLE LABS, LTD.,

                    Defendants.

Case No.: _____

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

        Plaintiffs Mary Molina and Carlo Garcia ("Plaintiffs") bring this Class Action Complaint against HRB Brands, LLC, Helen of Troy Limited, and Idelle Labs, Limited (collectively "Defendants"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

**CLASS ACTION COMPLAINT**

## NATURE OF THE ACTION

1.     This is a civil class action brought by Plaintiffs on behalf of all consumers who purchased Sure Unscented Aerosol antiperspirant (the "Sure Antiperspirant") or Brut Classic 24-Hour Protection aerosol antiperspirant (the "Brut Antiperspirant") (collectively the "Products") from Defendants for normal, household use. The Products are defective because they contain the chemical benzene, a known carcinogen that offers no therapeutic deodorant or antiperspirant benefit.

2.     The Brut brand, which bills itself as the "essence of men,"[1] was first launched in 1964 and has since established itself as a trusted name in men's personal care and hygiene products. Defendants market and sell Brut deodorant and antiperspirant including the Brut Antiperspirant throughout the United States, including the State of California.  Defendants distribute and sell the Brut Antiperspirant through various authorized retailers in store and online.

3.     The Sure brand was created by Procter & Gamble in 1972 as a personal care brand for men and women.  Today, Defendants market and sell Sure exclusively as a women's antiperspirant throughout the United States, including the State of California.  Defendants distribute and sell the Sure Antiperspirant through various authorized retailers in store and online.

4.     Defendants took advantage of the trust consumers have in the Brut and Sure brands, built over several decades, representing that the Products are safe for their intended use when, in reality, the Products contain significant concentrations of benzene, a harmful carcinogen.

5.     Benzene is a carcinogen known to cause cancer in humans. Long-term exposure additionally causes harmful effects on the bone marrow, a decrease in red blood cells leading to

---

[1] https://www.walmart.com/ip/Brut-24-Hour-Protection-Deodorant-Spray-Classic-Scent-10-0-oz/10317644 (last visited Nov. 29, 2021)

**CLASS ACTION COMPLAINT**

anemia, and excessive bleeding that can affect the immune system, leading to an increased chance of infection. According to FDA guidance, there is no safe level of benzene, and thus it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity." FDA, Q3C – 2017 Tables and List Guidance for Industry, https://www.fda.gov/media/71737/download.

6.     FDA guidance provides that "if [benzene's] use is unavoidable in order to produce a drug product with a significant therapeutic advance, then [its] levels should be restricted" to 2 parts per million ("ppm").  *Id.*

7.     The use of benzene in the Products is demonstrably avoidable. Feasible alternative formulations, designs, and materials were available to Defendants at the time they formulated, designed, and manufactured the Products.  Critically, such alternative formulations and designs were and are used by other manufacturers to produce and sell non-defective spray deodorants and antiperspirants.  In any event, the Products have a benzene concentration far above the FDA concentration limit of 2 ppm.

8.     The Products' benzene contamination was not disclosed to the consumer on the product label, the ingredients list, or otherwise.

9.     Plaintiffs seek damages and equitable remedies for themselves, and for the proposed Classes.

## **PARTIES**

**A.  Plaintiffs**

10.     Plaintiff Mary Molina is a resident and citizen of Pine Grove, California who purchased and used the Sure Antiperspirant within the relevant time period.

**CLASS ACTION COMPLAINT**

11.     Plaintiff Carlo Garcia is a resident and citizen of Sanger, California who purchased and used the Brut Antiperspirant within the relevant time period.

**B.  Defendants**

12.     Defendant HRB Brands, LLC ("HRB Brands") is a privately held company with headquarters in Westport, Connecticut that produces consumer goods sold around the United States, including in the State of California.  On its website, HRB Brands touts that they "make some of the best-known brands in the world" and "work for the well being of our customers every day."[2]

13.     Defendant Helen of Troy Limited ("Helen of Troy") is a publicly-traded, multinational consumer goods company with headquarters in El Paso, Texas and "a diversified portfolio of well-recognized and widely trusted brands."[3]

14.     Defendant Idelle Labs, Limited ("Idelle Labs") is a privately held, wholly owned subsidiary of Helen of Troy Limited with headquarters in El Paso, Texas.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Defendants are citizens of different states. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

---

[2] https://www.hrbbrands.com/brands (last visited Nov. 29, 2021)
[3] https://www.helenoftroy.com/company/ (last visited Nov. 29, 2021)

4

**CLASS ACTION COMPLAINT**

16.     This Court has personal jurisdiction over Defendants because they has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, because Defendants placed the Products into the stream of commerce directed in this District, and because Defendants purposely availed themselves of the laws of the United States and the State of California.

17.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendants transact business in this District, and Defendants have intentionally availed themselves of the laws and markets within this District.

## FACTUAL ALLEGATIONS

### A.  The Brut Brand

18.     The Brut brand, which bills itself as the "essence of men,"[4] was first launched in 1964 in France and has since established itself as a trusted name in men's personal care and hygiene products.

19.     Defendant Helen of Troy acquired Brut in 2003, touting the brand as "one of the most well-known, fragrance-led male personal care brands preferred by men around the world."[5]

20.     In June 2021, Defendant HRB Brands acquired twelve personal care brands from Defendant Helen of Troy, including Brut.   In announcing the acquisition,  HRB Brands

---

[4] https://www.walmart.com/ip/Brut-24-Hour-Protection-Deodorant-Spray-Classic-Scent-10-0-oz/10317644 (last visited Nov. 29, 2021)
[5] https://www.helenoftroy.com/emea-en/blog/cool_timeline/acquisition-of-brut/ (last visited Nov. 29, 2021)

**CLASS ACTION COMPLAINT**

acknowledged that "[t]hese well-known, iconic brands have strong consumer loyalty across distribution channels in North and South America."[6]

21.     Defendants' Brut product line, including the Brut Antiperspirant, is manufactured, distributed, and sold throughout the United States, including the State of California.

**B.  The Sure Brand**

22.     The Sure brand was created by Procter & Gamble in 1972 as a personal care brand for men and women.  Defendant Helen of Troy Limited acquired Sure in 2010.  Since its 2010 acquisition, Sure has been marketed and sold exclusively as a women's antiperspirant.

23.     Sure was among the twelve "well-known, iconic" personal care brands with "strong consumer loyalty" Defendant HRB Brands acquired from Defendant Helen of Troy Limited in June of 2021.

24.     Defendants' Sure product line, including the Sure Antiperspirant, is manufactured, distributed, and sold throughout the United States, including the State of California.

**C.  The Products**

25.     Deodorant is a product applied to the body to prevent or mask the odor of perspiration. Antiperspirants, a subclass of deodorants, prevent sweat glands from producing sweat. The Products are both deodorant and antiperspirant applied to the body as a spray.

26.     The U.S. Food and Drug Administration ("FDA") classifies and regulates most deodorants, including the Product, as cosmetics.  In addition, the FDA classifies and regulates antiperspirants, including the Products, as a drug.

---

[6] https://www.globenewswire.com/en/news-release/2021/06/08/2243993/25693/en/HRB-Brands-Announces-Acquisition-of-Personal-Care-Brands-from-Helen-of-Troy.html (last visited Nov. 29, 2021)

**CLASS ACTION COMPLAINT**

27.     On November 3, 2021, Valisure, an analytical pharmacy and consumer protection organization, petitioned the FDA to address the dangerous levels of benzene in the Products and other deodorants and antiperspirants based upon rigorous testing the organization had conducted for a number of spray deodorant and antiperspirant products.[7] The next day, Valisure released the results of these tests.[8]

28.     In testing, Valisure found average concentrations of benzene above the FDA concentration limit of 2 ppm in 16 spray deodorants, including the Products, which are manufactured and sold by Defendants.

29.     This testing revealed that both Products exceeded the FDA concentration limit for benzene by more than double.  To wit, Valisure found benzene concentrations of 5.68 ppm in the Sure Antiperspirant and 4.13 ppm in the Brut Antiperspirant.[9]

**D.  Danger Posed by the Product**

30.     The carcinogenic properties of benzene are well documented, as noted be the Centers for Disease Control and Prevention ("CDC"). See CDC, Facts About Benzene (2018), https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

31.     The U.S. Department of Health and Human Services (DHHS) has determined that benzene causes cancer in humans. Long-term exposure to high levels of benzene can cause leukemia, cancer of the blood-forming organs.

---

[7] https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-3.pdf (last visited Nov. 9, 2021).
[8] https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-body-spray-products-3/ (last visited Nov. 8, 2021).
[9] https://www.consumerlab.com/answers/benzene-contamination-in-deodorants-and-antiperspirants/benzene-deodorants/ (last visited Nov. 22, 2021)

**CLASS ACTION COMPLAINT**

32.     Long-term exposure to benzene additionally causes harmful effects on the bone marrow and can cause a decrease in red blood cells, leading to anemia.  It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection.

33.     Due to these significant health risks, the World Health Organization and the International Agency for Research on Cancer classify benzene as a Group 1 compound that is "carcinogenic to humans."[10]

34.     The FDA classifies Benzene as a Class 1 compound.[11]   According to FDA guidance:

> Solvents in Class 1 should not be employed in the manufacture of drug substances, excipients, and drug products, because of their unacceptable toxicity or their deleterious environmental effect.[12]

The FDA concentration limit for benzene is 2 ppm.[13]

35.     Defendants exploited decades of existing consumer trust in the Brut and Sure brands to sell the Products contaminated with a benzene concentration level well above the 2 ppm FDA concentration limit, thus subjecting unwitting consumers to dangerous levels of a known carcinogen.

**E.  Defendants' Representations**

36.     Defendants represent to consumers that Brut Antiperspirant is safe and effective for everyday use.  Although Brut Antiperspirant was found to contain benzene concentration well above the FDA limit, Defendants do not list benzene among the active or inactive ingredients

---

[10] https://www.who.int/water_sanitation_health/dwq/chemicals/benzenesum.pdf (last visited Nov. 7, 2021).
[11] https://www.fda.gov/media/71737/download (last visited Nov. 7, 2021).
[12] *Id.*
[13] *Id.*

**CLASS ACTION COMPLAINT**

anywhere on its website,[14] and nothing on the Brut Antiperspirant product label otherwise insinuates, states, or warns that it contains benzene:



37.     Defendants likewise represent to consumers that Sure Antiperspirant is safe and effective for everyday use.   Although Sure Antiperspirant was found to contain benzene concentration well above the FDA limit, Defendants do not list benzene among the active or

---

[14] https://www.brutworld.com/aerosol-antiperspirant-deodorant/ (last visited Nov. 29, 2021)
[15] https://www.walmart.com/ip/Brut-24-Hour-Protection-Deodorant-Spray-Classic-Scent-10-0-oz/10317644 (last visited Nov. 29, 2021)

**CLASS ACTION COMPLAINT**

inactive ingredients anywhere on its website,[16] and nothing on the Sure Antiperspirant product label otherwise insinuates, states, or warns that it contains benzene:







SHAKE WELL BEFORE USE.

**Drug Facts**

| Active ingredient | Purpose |
|---|---|
| Aluminum Chlorohydrate 10% (anhydrous) | Antiperspirant |

**Use** reduces underarm wetness

**Warnings**
For external use only.

Flammable
• do not spray near flame or while smoking
• contents under pressure
• do not crush, puncture or incinerate
• do not store at temperature above 120°F

Do not use on broken skin

Ask a doctor before use if you have kidney disease

When using this product
• keep away from face and mouth to avoid breathing it
• avoid spraying in eyes
• use only as directed; intentional misuse by deliberately concentrating and inhaling the contents can be harmful or fatal

Stop use if rash or irritation occurs

Keep out of reach of children. If swallowed, get medical help or contact a Poison Control Center right away.

**Directions**
• apply to underarms only
• shake well before each use
• hold can about 6 inches away from underarm and spray.

**Inactive ingredients**
Butane, Hydrofluorocarbon 152a, Cyclopentasiloxane, Isopropyl Myristate, Dimethicone, Disteardimonium Hectorite, Propylene Carbonate, Ethylene Brassylate

Questions? 1-800-487-7273   www.suredeodorant.com

© Idelle Labs, Ltd. All rights reserved
Made in the Canada and distributed by Idelle Labs, Ltd., El Paso, TX 79912
Sure® is a registered trademark of Kaz Europe Sarl.

UNSCENTED

aerosol

ANTI-PERSPIRANT
DEODORANT

Net Wt 6oz (170g)





[17]

### F.  Defendants' Products are Adulterated and Illegal to Sell

38.     Defendants' antiperspirant Products are drugs which are adulterated under 21 U.S.C. § 351(a)(1) based upon the presence of benzene.

---

[16] https://suredeodorant.wpengine.com/unscented-invisible-solid-antiperspirant-deodorant-aerosol/ (last visited Nov. 29, 2021)
[17] https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=9d832eed-4ff5-455f-8678-a65d4e8d8c71&type=display (last visited Nov. 29, 2021)

**CLASS ACTION COMPLAINT**

39.     The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

40.     California's Sherman Law has expressly adopted the federal labeling requirements as its own. The definition of "adulterated" is exactly the same as the FD&C Act under CA Health & Safety Code Sections 111250, 111255, 111260, and 111265.

41.     As alleged herein, Defendants have violated the FDCA, the Sherman Law, and consumer protection statutes.

42.     Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from their omissions surrounding benzene contamination affecting the Products.

43.     No reasonable consumer, including Plaintiffs, would have purchased the Products had they known of the material omissions of material facts regarding the presence of benzene. Accordingly, Plaintiffs and the Classes (as defined below) suffered injury in fact and lost money as a result of Defendants' misleading representations and omissions and did not receive the benefit-of-the- bargain.

44.     Plaintiffs and the Classes' injury is underscored by the fact that numerous other products offering the same therapeutic benefit at comparable prices exist that are not contaminated with benzene.

45.     Plaintiffs and the Classes may be harmed again because they want to purchase the Products in the future; however, without injunctive relief Plaintiffs would not be able to know or trust that Defendants will truthfully and legally label the Products and would likely be misled again.

**PLAINTIFFS' FACTUAL ALLEGATIONS**

**CLASS ACTION COMPLAINT**

**PLAINTIFF MARY MOLINA**

46.     Plaintiff Mary Molina has purchased the Sure Antiperspirant regularly for many years, several times each year.  The last time Plaintiff Molina purchased the Sure Antiperspirant was in or around early summer 2021.  Plaintiff Molina purchases the Sure Antiperspirant at various locations including the Safeway, Raley's, CVS, and Walmart in Jackson, California, the Rite Aid in Citrus Heights, California, the Target in Folsom, California, and the Target in El Dorado Hills, California.

47.     Nowhere on the packaging did Defendants disclose that the Sure Antiperspirant contains benzene at the time of purchase.

48.     If Plaintiff Molina had been aware of the existence of benzene in the Sure Antiperspirant, she would not have purchased it or would have paid significantly less.

49.     As a result of Defendants' actions, Plaintiff Molina has incurred damages, including economic damages.

**PLAINTIFF CARLO GARCIA**

50.     Plaintiff Carlo Garcia purchased the Brut Antiperspirant on July 31, 2020 online at Amazon.com for delivery to his home in Sanger, California.

51.     Nowhere on the packaging did Defendants disclose that the Brut Antiperspirant contains benzene at the time of purchase.

52.     If Plaintiff Garcia had been aware of the existence of benzene in the Brut Antiperspirant, he would not have purchased it or would have paid significantly less.

53.     As a result of Defendants' actions, Plaintiff Garcia has incurred damages, including economic damages.

**CLASS ACTION COMPLAINT**

## **CLASS ACTION ALLEGATIONS**

54.     Plaintiffs brings this action individually and as representatives of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-defined Classes:

> **National Class:** During the fullest period allowed by law, all persons in the United States who purchased any of the Products for their personal use and not for resale within the United States.
>
> **California Subclass:** During the fullest period allowed by law, all persons in the State of California who purchased any of the Products for their personal use and not for resale in the State of California.

55.     Members of the classes described are referred to as "Class Members" or members of the "Classes."

56.     The following are excluded from the Classes: (1) any Judge presiding over this action and members of his or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parent has a controlling interest (as well as current or former employees, officers, and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

57.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

58.     Plaintiffs reserves the right to amend the definitions of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

**CLASS ACTION COMPLAINT**

59. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiffs but may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

60. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

   a) Whether the Products contain benzene at the time of purchase;

   b) Whether Defendants omitted or failed to disclose material information to Plaintiffs and Class Members regarding the Products;

   c) Whether the Products are defectively designed, formulated, and/or manufactured;

   d) Whether Defendants knew or reasonably should have known about the harmful level of benzene in the Products prior to distributing and selling them to Plaintiffs and Class Members;

   e) Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products is deceptive;

   f) Whether Defendants' actions violate the consumer protection statutes invoked herein;

   g) Whether Defendants breached the implied warranty of merchantability relating to the Products;

   h) Whether Defendants breached an express warranty to Plaintiffs and Class Members;

i)   Whether Defendants were unjustly enriched at the expense of the Plaintiffs and Class Members;

j)   Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

k)   Whether Plaintiffs and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

l)   Whether Plaintiffs and the Class Members are entitled to injunctive, declaratory, or other equitable relief.

61.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

62.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class Members, as each class member was subject to the same omission of material fact and misrepresentations regarding the presence of benzene in the Products. Plaintiffs shares the aforementioned facts and legal claims or questions with Class Members, and Plaintiffs and all Class Members have been similarly affected by Defendants' common course of conduct alleged herein.  Plaintiffs and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' deceptive omission of material fact and misrepresentations regarding the presence of benzene in the Products.

63.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Classes because they are members of the Classes and her interests do not conflict with the interests of the Class Members she seeks to represent.

**CLASS ACTION COMPLAINT**

Plaintiffs have also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiffs and their counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

64. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a class action, Class Members will continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. Accordingly, the proposed Classes satisfies the requirements of Fed. R. Civ. P. 23(b)(1).

65. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and All Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

66. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

- The damages suffered by each individual putative Class Member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

- Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

16

**CLASS ACTION COMPLAINT**

- The claims presented in this case predominate over any questions of law or fact affecting individual Class Members;

- Individual joinder of all putative Class Members is impracticable;

- Absent a class action, Plaintiffs and putative Class Members will continue to suffer harm as a result of Defendants' unlawful conduct; and

- This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and putative Class Members can seek redress for the harm caused by Defendants.

67.     In the alternative, the Classes may be certified for the following reasons:

- The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants;

- Adjudications of individual Class and Members' claims against Defendants would, as a practical matter, be dispositive of the interests of other putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

- Defendants have acted or refused to act on grounds generally applicable to the putative Classes, thereby making appropriate final and injunctive relief with respect to the putative Classes as a whole.

**COUNT I**
**California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

68.     Plaintiffs repeat and re-allege the allegations above as if set forth herein.

69.     Defendants' conduct constitutes violations under California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq.. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

17

**CLASS ACTION COMPLAINT**

70.     Defendants' conduct falls within the meaning of this statute because they caused transactions to occur resulting in the sale or lease of goods or services to consumers – namely, the sale of the Products to Plaintiffs and the California Subclass. Deodorant and antiperspirant sprays are considered goods within the meaning of the statute under Civil Code § 1761(a) and Defendants' sale of the Products is considered a service under Civil Code § 1761(b).

71.     Plaintiffs and Class Members are consumers pursuant to the CLRA.

72.     Each Defendant is a person pursuant to the CLRA.

73.     The Products are goods pursuant to the CLRA.

74.     Defendants violated the CLRA by way of the following provisions:

- In violation of Civil Code § 1770(a)(5), Defendants represented (and continue to represent) that their goods have characteristics which they do not have – that, in exchange for each payment, Plaintiffs and the members of the California Subclass receive antiperspirant which is functioning as intended and which is not contaminated with benzene;

- In violation of Civil Code § 1770(a)(14), Defendants represented (and continue to represent) that a consumer has rights, remedies and/or obligations which they did not have – that Plaintiffs and members of the California Subclass receive antiperspirant which is functioning as intended and which is not contaminated with benzene, and that Defendants are capable of correcting defects when they are not;

75.     Defendants also engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code § 1770(a)(5) and (a)(7) when they represented through their advertising, warranties, and other express representations that the Products have benefits or

**CLASS ACTION COMPLAINT**

characteristics that they did not actually have, namely that the Products were safe to use and failing to disclose that the Products were contaminated with the carcinogen benzene.

76.     Defendants are aware that their representations are false and misleading – specifically, the Defendants continued to sell the Products into the stream of commerce even after they had knowledge that the Products were contaminated with benzene.

77.     Plaintiffs and California Subclass have suffered injury-in-fact and actual damages resulting from Defendants' omissions and misrepresentations because Defendants knew that the Products were contaminated with benzene.

78.     Contemporaneously with the filing of this Complaint, Plaintiffs and Class Members put Defendants on written notice of their claims arising from violations of numerous provisions of California law, including the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1770, et seq., as well as other causes of action.  Plaintiffs will amend their Complaint to add claims for monetary damages if Defendants fail to take the corrective actions.

79.     Plaintiff's declaration stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto as Exhibit A.

80.     In accordance with Civil Code § 1780(a), Plaintiffs and the other California Subclass Members seek injunctive and equitable relief for Defendants' violations of the CLRA, including an injunction to enjoin Defendants from continuing their deceptive advertising and sales practices.

81.     Pursuant to California Civil Code § 1780(a)(1)-(5) and § 1780(e), Plaintiffs seek an order enjoining Defendants from the unlawful practices described above, a declaration that Defendants' conduct violates the Consumers Legal Remedies Act, reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper under the CLRA.

**CLASS ACTION COMPLAINT**

82.     Plaintiffs and the California Subclass Members' injuries were proximately caused by Defendants' fraudulent business practices.

83.     Therefore, Plaintiffs and California Subclass Members are entitled to relief under the CLRA.

**COUNT II**
**California's False Advertising Law (the "FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

84.     Plaintiffs repeat and re-allege the allegations above as if set forth herein.

85.     California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

86.     Defendants advertised and promoted the Products by relying on the trust and brand loyalty customers had for their Brut and Sure brands and representing that the Products were safe for personal use, when in reality the Products were contaminated with benzene.  Defendants' advertisements and inducements were made in and originated from California and fall within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that Defendants' representations were intended to induce consumers to purchase the Products. Defendants knew that those statements were false and misleading as it knew or should have known through the exercise of reasonable care that the Products were contaminated with benzene.

**CLASS ACTION COMPLAINT**

87.     Plaintiffs have standing to pursue claims under the FAL as they reviewed and relied on Defendants' packaging, advertising, representations, and marketing materials regarding the Products, when selecting and purchasing the Products.

88.     Plaintiffs purchased the Products in reliance on the statements made in Defendants' advertising and marketing materials and Defendants' omissions and concealment of material facts regarding the Products.

89.     Plaintiffs and the California Subclass lost money or property as a result of Defendants' FAL violations because (a) they would not have purchased Defendants' Products absent Defendants' representations that the Products were safe and effective; (b) they would not have purchased the Products for the same price absent Defendants' misrepresentations; and (c) Defendants' Products did not have the characteristics, benefits, or quantities as promised.

90.     Plaintiffs seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendants and by means of its deceptive or misleading representations, including monies already obtained from Plaintiffs as provided for by the California Business and Professions Code § 17500.

**COUNT III**
**California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

91.     Plaintiffs repeat and re-allege the allegations above as if set forth herein.

92.     Each Defendant is a person pursuant to the UCL.

93.     Defendants engaged in unlawful, fraudulent, and unfair business practices.

94.     Defendants' conduct was unlawful because it violates the CLRA, the FAL, tort law, and contract law.

21

**CLASS ACTION COMPLAINT**

95.     Defendants' conduct is fraudulent because they continued to represent that their goods were fit for their intended use when they knew that the Products were contaminated with benzene in an attempt to get consumers to continue to buy the Products; and, Defendants' conduct is fraudulent because they did not disclose to the buyers that the Products were contaminated with benzene and continue to conceal the fact of this contamination in an attempt to keep consumers from seeking refunds or seeking other redress, so they would not bear the costs of the defect and any damage they may have caused.

96.     Defendants' conduct constitutes an unfair business practice – under the UCL, a business practice is considered to be "unfair" if the conduct alleged is immoral, unethical, oppressive, or substantially injurious to consumers; as well as if the conduct causing alleged injury which is not outweighed by benefits to other consumers or to competition, and that the injury is of a type which the consumer could not have avoided.

97.     Defendants' behavior is immoral, unethical, oppressive and injurious to consumers because they are profiting from concealing the presence of benzene in the Products, which are still being sold to this day.

98.     Defendants' retention of profits from the aforementioned conduct does not outweigh the economic harm that said retention imposes on consumers. The lone party that benefits is the Defendants – their conduct also harms competition, who would otherwise be the recipient of the business that Defendants acquired using omissions and misrepresentations.

99.      Plaintiffs and the California Subclass Members had no way of knowing that Defendants were selling defective products.

100.     The above acts of Defendants in disseminating said misleading and deceptive statements to consumers throughout the State of California, including to Plaintiffs and those

**CLASS ACTION COMPLAINT**

similarly situated, were and are likely to deceive reasonable consumers by obfuscating the true defective nature of the Products.

101.    As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendants from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendants' wrongful conduct to the fullest extent permitted by law.

102.    Mislabeled products cannot legally be manufactured, advertised, distributed, or sold. Thus, the Products have no economic value and are worthless as a matter of law, and purchasers of the Products are entitled to a restitution refund of the purchase price of the Products.

103.    Therefore, Plaintiffs and the California Subclass Members are entitled to relief under the UCL.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of the National Class and,**
**alternatively, the California Subclass)**

104.    Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

105.    Plaintiffs, and each member of the Classes, formed a contract with Defendants at the time Plaintiffs and each member of the Classes purchased the Products.

106.    The terms of the contract include the promises and affirmations of fact made by Defendants on the Products' packaging and through marketing and advertising, as described above.

**CLASS ACTION COMPLAINT**

107. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiffs and the members of the Classes and Defendants.

108. As set forth above, Defendants purport through its advertising, labeling, marketing, and packaging, to create an express warranty that the Products are safe for its intended use.

109. Plaintiffs and the members of the Classes performed all conditions precedent to Defendants' liability under this contract when they purchased the Products.

110. Defendants breached express warranties about the Products and their qualities because Defendants' Products contained the harmful carcinogen benzene at the time of purchase and the Products do not conform to Defendants' affirmations and promises described above.

111. Plaintiffs and each of the members of the Classes would not have purchased the Products had they known the true nature of the harmful chemical in the Products.

112. As a result of Defendants' breach of warranty, Plaintiffs and each of the members of the Classes have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

**COUNT V**
**Breach of Implied Warranty**
**(On Behalf of the National Class and,**
**alternatively, the California Subclass)**

113. Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

114. Defendants provided Plaintiffs and Class Members with implied warranties that the Products were merchantable and fit for the ordinary purposes for which they were sold, *i.e.* that they were free of harmful chemicals such as benzene.

**CLASS ACTION COMPLAINT**

115.    Defendants marketed, sold, and/or distributed the Products, and Plaintiffs and other Class Members purchased the Products.

116.    Plaintiffs bring this claim for breach of the implied warranty of merchantability on behalf of themselves and other consumers who purchased the Products with the expectation of the Products not containing dangerous chemicals such as benzene.

117.    Defendants have breached the implied warranties of merchantability that they made to Plaintiffs and the prospective class. For example, Defendants impliedly warranted that the Products were free from defects, that they was merchantable, and that they were safe and fit for the ordinary purpose for which antiperspirant is used.

118.    When sold by Defendants, the Products were not merchantable, did not pass without objection in the trade, were not of adequate quality within that description, were not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.

119.    As a result of Defendants' breaches of implied warranties, Class Members did not receive the benefit of their bargain and suffered damages at the point of sale stemming from their overpayment for the Products that contained benzene.

120.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the other Class Members have been damaged in an amount to be proven at trial.

**COUNT VI**
**Unjust Enrichment**
**(In the Alternative To Count I And On Behalf of the National Class and, alternatively, the California Subclass)**

**CLASS ACTION COMPLAINT**

121.    Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

122.    Plaintiffs and the other members of the Classes conferred benefits on Defendants by purchasing the Products.

123.    Defendants have been unjustly enriched in retaining the revenues derived from the purchase of the Products by Plaintiffs and the other members of the Classes.

124.    Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Classes because they would have not purchased the Products if Defendants had disclosed that the Products contained benzene.

125.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and the other members of the Classes is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the other members of the Classes for their unjust enrichment, as ordered by the Court.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, pray for judgment and relief against Defendants as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiffs to serve as representatives for the Classes and Plaintiffs' counsel to serve as Class Counsel;

b) For an order enjoining Defendants from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendants wrongfully acquired by their illegal and deceptive conduct;

**CLASS ACTION COMPLAINT**

d) For an order requiring disgorgement of the monies Defendants wrongfully acquired by their illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendants' wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated: November 30, 2021                      Respectfully submitted,

By:

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

*/s/* Alex R. Straus
Alex R. Straus, Esq. (SBN 321366)
280 South Beverly Drive
Beverly Hills, CA 90212
Tel.:    (917) 471-1894
Fax:    (310) 496-3176
Email:  astraus@milberg.com

Nick Suciu, III*
*nsuciu@milberg.com*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:    (313) 303-3472
Fax:    (865) 522-0049

Jennifer Czeisler*
Virginia Ann Whitener*

27

Russell Busch*
jczeisler@milberg.com
gwhitener@milberg.com
rbusch@milberg.com
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.:    (865) 247-0080
Fax:    (865) 522-0049

*Pro Hac Vice* Application
Forthcoming

*Attorneys for Plaintiff*

**CLASS ACTION COMPLAINT**